IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DIAN C. LYMBURNER,

     Plaintiff,

v.

U.S. FINANCIAL FUNDS, INC.,

     Defendant.

No. C-08-00325 EDL

**ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

    Plaintiff Dian Lymburner alleges that Defendant U.S. Financial Funding, Inc. violated the Truth in Lending Act, 15 U.S.C. § 1601 et seq., and California statutory and common law in connection with the terms of a residential mortgage product that was sold to Plaintiff. Plaintiff filed a Motion for Class Certification, which Defendant opposed. The Court held a hearing on December 15, 2009. During the hearing, the Court indicated its intention to grant the Motion for Class Certification, but noted that the proposed class definition was inadequate. The Court ordered the parties to meet and confer in an effort to modify the class definition based on the Court's comments at the hearing. On January 19, 2010, the parties submitted a letter jointly proposing a modified class definition. For the reasons stated at the hearing and in this Order, Plaintiff's Motion for Class Certification is granted.

**FACTS**

    In evaluating a motion for class certification, the Court must take the allegations of the complaint as true. See Western States Wholesale v. Synthetic Indus., 206 F.R.D. 271, 274 (C.D. Cal. 2002). Plaintiff is a homeowner living in Rohnert Park, California. See Third Am. Compl. ("TAC") ¶ 2. On November 16, 2006, she refinanced her existing home loan and entered into an Option ARM loan with Defendant that was secured by her residence. See id.

Defendant is the mortgage broker that originated Plaintiff's loan. See TAC ¶ 3. The loan was a product of IndyMac Bank. See Fields Decl. Ex. 6 at 5. The loan sold to Plaintiff was a five-year fixed payment ARM, which in general is an adjustable rate mortgage based on a margin plus an index, the 12-month treasury average. See Def.'s Opp. at 2. The loan provides an initial payment based on a substantially discounted initial interest rate. See id. While the interest rate may adjust monthly, the minimum monthly payment is held fixed for five years. See id. The minimum payment then adjusts, in incremental steps, to a payment that reflects the fully indexed rate. See id. The loan program includes caps that set a maximum interest rate and a maximum amount of unpaid principal that might result from negative amortization. See id. After Defendant sold the loan to a customer, IndyMac purchased the loan from Defendant. See Fields Decl. Ex. 6 at 4.

Plaintiff has refinanced real property several times. See Nassi Decl. Ex. A at 14-15. Within weeks of her retirement on October 1, 2006, she was first contacted by Eric on behalf of Defendant. See id. at 51. She had conversations with Eric over the course of several weeks. See id. at 52, 58. During those conversations, Eric told Plaintiff that he could reduce her loan payments to approximately $700 per month. See id. at 57, 58, 60. Eventually, she decided to refinance with Eric. See id. at 60. Plaintiff testified that there was never any discussion about whether the loan balance could increase while the payments were fixed, whether there would be different payment levels or whether there would be negative amortization. See id. at 64, 65. She thought her monthly loan payments would be fixed at $700 for five years. See id. at 64-65, 85.

Plaintiff signed the loan papers at her home over the course of several hours. See Nassi Decl. Ex. A at 68-69. The stated monthly income on the loan documents was $6,000, which is more than Plaintiff actually receives from her pension and social security benefits. See id. at 70-77; Ex. B at USFFI0130. Plaintiff initialed the loan near the stated income section, and the higher numbers did not strike her as being incorrect. See id. Ex. A at 77-78.

After Plaintiff received her first bill, she saw that the interest rate was 9% and that there were amounts being added to the principal. See Nassi Decl. Ex. A at 118. The payment was not what she understood it would be. See id. (stating that the loan was "just so not what [she] signed up for."). She immediately started trying to refinance with another bank. See id. at 119-20. She made two

payments on the loan before she was able to refinance in April 2007. See id. at 120.

Plaintiff claims that Defendant violated the Truth in Lending Act and California's Unfair Competition Law, and is liable for fraud because the loan documents did not disclose the key terms of the loan. Specifically, Plaintiff alleges that the loan documents did not disclose that, for the first three years, the payments would not even satisfy the interest owed, resulting in negative amortization. See TAC at ¶¶ 19-22. By the time Plaintiff found out about this, she was already locked into a loan with a harsh prepayment penalty. See id. ¶¶ 22-23.

**LEGAL STANDARD**

Plaintiffs seeking to represent a class must satisfy the threshold requirements of Rule 23(a) as well as the requirements for certification under one of the subsections of Rule 23(b). Rule 23(a) provides that a case is appropriate for certification as a class action if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Plaintiff seeks class certification under Rule 23(b)(3), which provides that a case may be certified as a class action if:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3).

A plaintiff seeking class certification bears the burden of demonstrating that each element of Rule 23 is satisfied, and a district court may certify a class only if it determines that the plaintiff has met its burden. See General Tel. Co. v. Falcon, 457 U.S. 147, 158-61 (1982); Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1308 (9th Cir. 1977). In making this determination, the Court may not consider the merits of the plaintiff's claims. See Burkhalter Travel Agency v. MacFarms Int'l, Inc., 141 F.R.D. 144, 152 (N.D. Cal. 1991). Rather, the Court must take the substantive allegations of the complaint as true. See Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975). Nevertheless, the Court need not accept conclusory or generic allegations regarding the suitability of the litigation for

3

**United States District Court**
For the Northern District of California

1  resolution through class action. See Burkhalter, 141 F.R.D. at 152. In addition, the Court may

2  consider supplemental evidentiary submissions of the parties. See In re Methionine Antitrust Litig.,

3  204 F.R.D. 161, 163 (N.D. Cal. 2001); see also Moore v. Hughes Helicopters, Inc., 708 F.2d 475,

4  480 (9th Cir. 1983) (noting that "some inquiry into the substance of a case may be necessary to

5  ascertain satisfaction of the commonality and typicality requirements of Rule 23(a)"; however, "it is

6  improper to advance a decision on the merits at the class certification stage"). Ultimately, it is in the

7  Court's discretion whether a class should be certified. See Molski v. Gleich, 318 F.3d 937, 946 (9th

8  Cir. 2003); Burkhalter, 141 F.R.D. at 152.

**DISCUSSION**

**1.   Class definition**

As a threshold matter, before reaching the requirements of Rule 23, the party seeking class certification must demonstrate that an identifiable and ascertainable class exists. See Mazur v. eBay, Inc., 257 F.R.D. 563, 567 (N.D. Cal. 2009). "An implied prerequisite to certification is that the class must be sufficiently definite." Whiteway v. FedEx Kinko's Office & Print Servs., Inc., 2006 WL 2642528, at *3 (N.D. Cal.2006). "A class definition should be precise, objective, and presently ascertainable," though "the class need not be so ascertainable that every potential member can be identified at the commencement of the action." O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D. Cal.1998) (internal quotations omitted).

The parties have jointly proposed the following revised class definition:

> All individuals in the United States of America who, between January 17, 2004 and the date that notice is mailed to the Class, obtained an Option ARM loan originated by U.S. FINANCIAL FUNDING, INC., with the following characteristics:
>
> (i) The numerical interest rate listed on page one of the Promissory Note is 3.0% or less;
>
> (ii) In the same paragraph referenced in (i), the Promissory Note uses the term "may" instead of "will" or "shall" change, when describing an increase in that listed numerical rate. E.g : The interest rate I will pay **may** change;
>
> (iii) The margin amount added to the index for the loan is equal to or greater than 1.75%;
>
> (iv) The promissory note does not contain any statement that paying the amount listed as the "initial monthly payment" "will" as opposed to "may" result in negative amortization after the first interest rate change date.

4

> Excluded from the Class are Defendant's employees, officers, directors, agents, representatives, and their family members, as well as the Court and its officers, employees, and relatives.

Joint Statement Regarding Class Definition (docket number 116) at 1-2. The Court finds that the class is ascertainable, particularly because Plaintiff has stated that only one set of the same loan documents is at issue, and there is no showing to the contrary. Further, class membership here is not based on oral misrepresentations or on documents that some class members may not have received, which would weigh against ascertainability. See Kent v. Sunamerica Life Ins. Co., 190 F.R.D. 271 (D. Mass. 2000) (determining that a class was not ascertainable where all plaintiffs did not receive the same documents relating to life insurance policies, and some plaintiffs relied on oral representations in addition to the documents). Instead, class membership can be ascertained by looking at the documents, particularly in light of the joint revised class definition.

**2. Rule 23(a)**

**A. Numerosity**

The class must be so numerous that joinder of all members individually is "impracticable." See Fed. R. Civ. P. 23(a)(1). When evaluating numerosity, courts should consider the number of class members, whether their identities are known, the geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive relief is sought. See William W. Schwarzer, et al., Federal Civil Procedure Before Trial, §§ 10:260-10:264 (Rutter Group 2009). There is no magic number that will satisfy the numerosity requirement, but numerosity has been found when a class comprised forty or more members, and not found when the class comprised twenty-one or fewer members. See Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995); Ansari v. New York Univ., 179 F.R.D. 112, 114 (S.D. N.Y.1998); see also Wamboldt v. Safety-Kleen Sys., Inc., 2007 WL 2409200, *11 (N.D. Cal. Aug. 21, 2007) (numerosity satisfied when class consisted of approximately 200 members).

Defendant's discovery responses reveal that it made 104 loans for property in California, and seventeen on property outside California is seventeen. See Fields Decl. Ex. 6 at 3. Therefore, the class may number as many as 121, which satisfies the numerosity requirement.

**B. Commonality**

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." This standard is not strictly construed:

> Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

Hanlon v. Chrysler, 150 F.3d 1011, 1019 (9th Cir. 1998), see also Staton v. Boeing, 327 F.3d 938, 953 (9th Cir. 2003).

Defendant argues that the facts relating to Plaintiff are not common with other class members but are unique to her set of circumstances. Specifically, Defendant argues that Plaintiff obtained a specific loan product and documents particular to that product, and that her complaint involves misrepresentations made specifically to her. However, a review of the complaint reveals that Plaintiff does not allege that any statements were made specifically to Plaintiff by anyone on behalf of Defendant, and instead relies on the standard documents themselves to support her claims that Defendant violated federal and state law. See Yokoyama v. Midland National Life Ins. Co., ___ F.3d ___, 2009 WL 2634770, at *5 (9th Cir. Aug. 28, 2009) (noting that "the plaintiffs' allegations, however, are that the deceptive acts or practices are omissions or misstatements in [the defendant's] own brochures. . . . The plaintiffs have thus crafted their lawsuit to avoid individual variance among the class members."); see also Plascencia v. Lending 1st Mortgage, 259 F.R.D. 437, 443 (N.D. Cal. 2009) ("The class members' claims clearly have something in common: all class members purchased an [Option Adjustable Rate Mortgage] from [the defendant], and their claims are based on a common theory of liability. Rule 23(a)'s commonality requirement has therefore been satisfied."). As in Yokoyama, the Court here is asked to focus on the loan documents, not representations made to each individual class member. Therefore, there are common questions of law and fact. See also Plascencia, 259 F.R.D. at 443. ("The class members clearly have something in common: all class members purchased an OARM from Lending 1st, and their claims are based on a common theory of liability. Rule 23(a)'s commonality requirement has therefore been satisfied.").

**C.     Typicality**

Rule 23(a)(3) also requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "Under the rule's permissive standards, representative

claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020; see also Staton, 327 F.3d at 957. Although the claims of the purported class representative need not be identical to the claims of other class members, the class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 156 (1982). That injuries may differ in amount does not defeat typicality. See William W. Schwarzer, et al., Federal Civil Procedure Before Trial, § 10:293 (Rutter Group 2009) (a plaintiff's claims may be typical although other members of the class suffered less or more injury).

Defendant argues that Plaintiff's claims are not typical because Plaintiff cannot obtain rescission of her mortgage because she refinanced, and that each class member's situation would have to be examined to see if rescission were available for that class member. Defendant, however, has provided no authority for the argument that typicality is defeated because the remedies may be different for class members or that the availability of rescission as a remedy will monopolize this case. Cf. Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (stating that individualized defenses do not preclude class certification unless "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.").

Plaintiff's claims are based on loans issued by Defendant allegedly without proper disclosures. Therefore, the claims are "'reasonably co-extensive with those of absent class members.'" See Plascencia, 259 F.R.D. at 444 (citing Hanlon, 150 F.3d at 1020). On their face, the claims satisfy the typicality requirement. Defendant has not pointed to any evidence showing that its conduct was unique to Plaintiff, or that the loan documents were materially different for certain class members.

**D. Adequacy**

Rule 23(a)(4) permits the certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class." Representation is adequate if: (1) the class representative and counsel do not have any conflicts of interest with other class members; and (2) the representative plaintiff and counsel will prosecute the action vigorously on behalf of the class. See Staton, 327 F.3d at 957.

7

Defendant has not pointed to any conflict between Plaintiff and counsel, nor has it made any showing that Plaintiff and her counsel will not vigorously pursue this action on behalf of the class members. See Plascencia, 259 F.R.D. at 445. Counsel has experience in class action work. See Anderson Decl. Ex. 6; Abrogast Decl. Ex. 1. Therefore, Plaintiff adequately represents the interests of the class.

**2.     Rule 23(b)(3)**

Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be served best by settling their differences in a single action." Hanlon, 150 F.3d at 1022 (quoting 7A Wright & Miller, Federal Practice and Procedure, § 1777 (2d ed. 1986)). Specifically, "when common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." Hanlon, 150 F.3d at 1022 (quoting 7A Wright & Miller, Federal Practice and Procedure, § 1778 (2d ed. 1986)).

**A.     Predominance**

The test for predominance asks "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon, 150 F.3d at 1022 (quoting Amchem, 117 S. Ct. at 2249). In contrast to the commonality requirement of Rule 23(a), Rule 23(b)(3) "focuses on the relationship between the common and individual issues." Hanlon, 150 F.3d at 1022. Claims need not be identical for common issues of law and fact to predominate, they need only be reasonably co-extensive with those of absent class members. Hanlon, 150 F.3d at 1020.

**1.     Truth in Lending Act claim**

Defendant argues that common questions of fact and law do not predominate with respect to Plaintiff's Truth in Lending Act claim. Defendant argues that Plaintiff has failed to show that the language of the loan documents are identical among class members. See, e.g., Andrews v. Chevy Chase Bank, FSB, 240 F.R.D. 612 (E.D. Wis. 2007) (certifying class when Truth in Lending Act disclosures were identical). However, in the briefing and at the hearing, Plaintiff represented without disagreement by Defendant that there was only one version of the loan documents at issue in this case, so the disclosure issues from the documents will be identical across the class in this case.

Further, even if the disclosures were not identical, claims need only be reasonably co-extensive to satisfy the predominance requirement under Hanlon.

Defendant also argues that because representations were allegedly made by Eric on behalf of Defendant, individual issues regarding Plaintiff's Truth in Lending Act claims will predominate. However, as described above, Plaintiff's Truth in Lending Act claims are not based on oral representations made by Defendant's representative to Plaintiff. Instead, Plaintiff's claims rely on the documents themselves. As stated in Plascencia:

> . . . the class members' TILA claims will turn exclusively on the written disclosures that were provided to class members in connection with their loan purchases; either the documents will satisfy TILA's technical requirements or they do not. There is no need to look into the state of mind or particular circumstances of individual class members.

Plascencia, 259 F.R.D. at 446. The focus is the same in this case. Accordingly, because Plaintiff's Truth in Lending Act claim is subject to proof through one set of loan documents and Plaintiff does not rely on individual representations to her by Defendant's representative, this claim satisfies the predominance requirement.

### 2. Fraud claim

Defendant argues that common issues do not predominate with respect to Plaintiff's fraud claim. "The elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC, 162 Cal. App. 4th 858, 868 (2008) (quoting Marketing West, Inc. v. Sanyo Fisher (USA) Corp., 6 Cal. App. 4th 603, 612-613 (1992)). "Class certification of a fraud claim may be appropriate if the plaintiffs allege that an entire class of people had been defrauded by a common course of conduct." Plascencia, 259 F.R.D. at 447(citing In re First Alliance Mortgage Co., 471 F.3d 977, 991 (9th Cir. 2006)). In cases involving material fraudulent omissions, the fourth element of reliance may be presumed. See Affiliated Ute Citizens

9

of Utah v. United States, 406 U.S. 128, 153-54 (1972) (holding that where a case "involv[es] primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery;" rather, "[a]ll that is necessary is that the facts withheld be material," in the sense that a reasonable person "might have considered them important" in making his or her decision); Vasquez v. Superior Court, 4 Cal. 3d 800, 814 (1974) (holding that class certification is appropriate even where there may be individual issues of reliance because "it is not necessary to show reliance upon false representations by direct evidence;" rather, "reliance upon alleged false representations may be inferred from the circumstances attending the transaction which oftentimes afford much stronger and more satisfactory evidence of the inducement which prompted the party defrauded to enter into the contract than his direct testimony to the same effect.") (internal quotation marks omitted).

Here, Defendant argues that the fact finder in this case will have to consider individual questions about whether the class members relied on Defendant's alleged inadequate disclosures or other unfair conduct, and whether that reliance caused the class member's harm. See, e.g., Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC, 162 Cal.App.4th 858, 868-69 (2008) (element of fraud is justifiable reliance). Defendant cites Gartin v. S&M NuTec, LLC, 245 F.R.D. 429, 437 (C.D. Cal. 2007) in support of this argument, but that case is inapposite. In Gartin, the plaintiffs sought to certify a class of dog owners who had given dog treats to their dogs after which the dogs had health problems. The court determined that individual reliance issues predominated because the type of representations, if any, regarding the dog treat product was an individual question.

Defendant also relies on Poulos v. Caesars World, Inc., 379 F.3d 654 (9th Cir. 2004) to support its argument that Plaintiff is not afforded a presumption of reliance on her fraud claims. In Poulos, casino and cruise ship patrons alleged that the defendants defrauded patrons because the labels on gaming machines allegedly contained fraudulent omissions that led the plaintiffs to believe that they were playing true games of chance when, in fact, the machines were operated by computer programs that knew the outcomes in advance. The Poulos court found that the plaintiffs's allegations were primarily based on affirmative misrepresentations based on the mislabeling of video poker machines, or mixed claims based on the mislabeling of electronic slot machines, rather than fraudulent omissions. Therefore, the plaintiffs were not entitled to a presumption of reliance.

This case is not like Gartin or Poulos. Here, Plaintiff alleges that the loan documents themselves -- the same ones given to all putative class members -- form the basis for her claims, not any varying representations made on behalf of Defendant. Plaintiff also alleges that certain information regarding interest rates and the applicability of negative amortization was omitted from the loan documents. Moreover, the fact finder in this case could find that the interest rates and negative amortization provisions of the loan were material because a reasonable person would want to know about those terms prior to signing the loan documents. Therefore, because Plaintiff is entitled to the presumption of reliance, and Plaintiff's fraud claim arises from a common course of conduct by Defendant, common issues will predominate.

### 3. Unfair competition claim

California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The UCL treats violations of other laws as unlawful business practices independently actionable under state law, and prohibits activity that is "likely to deceive" the public. See Chabner v. United Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000); Puentes v. Wells Fargo Home Mortgage, Inc., 160 Cal.App.4th 638, 645 (2008). Moreover, a business practice may be unfair or fraudulent in violation of the UCL even if it does not violate any law. See Olszewski v. Scripps Health, 30 Cal.4th 798, 827 (2003). Unlike a claim for fraud, "liability under the UCL does not require reliance and injury." Plascencia, 259 F.R.D. at 448.

Only the named plaintiff in an UCL class action case need show injury and causation. See In re Tobacco II Cases, 46 Cal.4th 298, 326-27 (2009). Accordingly, the "individual circumstances of each class member's loan need not be examined because the class members are not required to prove reliance and damage." Plascencia, 259 F.R.D. at 448. Here, Plaintiff has alleged that Defendant engaged in unfair business practices with respect to the loans that caused her harm. Therefore, common issues will predominate on the UCL claim.

### B.  Superiority

The test for superiority of the class action mechanism requires "determination of whether the objectives of the particular class action procedure will be achieved in the particular case," which

11

"necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." Hanlon, 150 F.3d at 1023 (citing 7A Wright & Miller, Federal Practice and Procedure, § 1779 (2d ed. 1986)). Here, as in Hanlon, the alternative mechanism would be individual claims for relatively small amounts of damages. This would not only burden the court system that would be deciding the same legal issues in a number of small cases, but would also not make economic sense for litigants or lawyers. It is possible that in many, if not most, individual cases, "litigation costs would dwarf potential recovery." Hanlon, 150 F.3d at 1023; see also Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1154, 1163 (9th Cir. 2001) ("If plaintiffs cannot proceed as a class, some-perhaps most-will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover.").

Defendant argues that because Plaintiff's claims are not typical, a class action is not a superior method. However, as described above, Plaintiff's claims are typical for purposes of Rule 23(a), and common questions predominate under Rule 23(b)(3). Defendant further argues that because only limited relief is available from Defendant, which is defunct and did not own the loans at issue in this case, a class action is neither practical nor superior. However, as noted by Plaintiff, because Defendant is defunct, the amount available for recovery in this case is presumably finite and possibly small, so a class action is a superior method for this case to permit Defendant to evaluate all claims and to ensure that no potential litigant is left out.

### 3. Unclean hands defense

Defendant argues that Plaintiff's claims are subject to an unclean hands defense on the grounds that Plaintiff misstated her income on the application to be $6,000, which she alleges was "grossed up" by Defendant's agent. Even if Plaintiff failed to accurately state her income, Defendant has not shown that the misrepresentation of income was material or that Defendant relied on the "grossed up" income. Defendant sold these loans to other entities, which makes the income term less material. Further, Plaintiff argues persuasively that even if she is subject to the unclean hands defense, a "representative may satisfy the typicality requirement even though that party may later be barred from recovery by a defense particular to him that would not impact other class members." See In re Sumitomo Copper Litig., 182 F.R.D. 85, 95 (S.D. N.Y. 1998); see also Hanon,

976 F.2d at 508. Moreover, even if the equitable defense of unclean hands has been applied to legal actions in California (see Fibreboard Paper Prods. Corp. v. East Bay Union of Machinists, Local 1304, United Steelworkers of America, AFL-CIO, 227 Cal.App.2d 675, 728 (1964) ("We are satisfied that the equitable defense of unclean hands is available in this state as a defense to a legal action.")), there is authority that it is not available in unfair competition cases (see, e.g., Ticconi v. Blue Shield of Cal. Life & Helath Ins. Co., 160 Cal.App.4th 528, 543 (2008) ("Courts have long held that the equitable defense of unclean hands is not a defense to an unfair trade or business practices claim based on violation of a statute.")) or in Truth in Lending Act cases (see Semar v. Platte Valley Fed. Sav. & Loan Ass'n, 791 F.2d 699, 705 (9th Cir. 1986) ("Congress did not intend for TILA to apply only to sympathetic consumers; Congress designed the law to apply to all consumers, who are inherently at a disadvantage in loan and credit transactions.")). At most, therefore, the unclean hands defense could apply to Plaintiff's fraud claim, but the presence of a possible defense does not bar class certification.

**4.     Statute of limitations**

Defendant argues that Plaintiff's claims are barred by the statute of limitations under the Truth in Lending Act, which is one year from the date of the occurrence of the violation. See 15 U.S.C. § 1640(e). Plaintiff filed her complaint on January 17, 2008, but Defendant argues that Plaintiff testified that she was aware of Defendant's alleged misconduct as soon as she received her first bill in December 2006. Defendant argues that the deadline to file this lawsuit was therefore in December 2007. This issue, however, goes to the merits of this case, not whether a class should be certified. See Burkhalter, 141 F.R.D. at 152.

**CONCLUSION**

Accordingly, Plaintiff's Motion for Class Certification is granted. The class is defined as:

> All individuals in the United States of America who, between January 17, 2004 and the date that notice is mailed to the Class, obtained an Option ARM loan originated by U.S. FINANCIAL FUNDING, INC., with the following characteristics:
>
> (i) The numerical interest rate listed on page one of the Promissory Note is 3.0% or less;
>
> (ii) In the same paragraph referenced in (i), the Promissory Note uses the term "may" instead of "will" or "shall" change, when describing an increase in that listed numerical rate. E.g : The interest rate I will pay **may** change;

13

(iii) The margin amount added to the index for the loan is equal to or greater than 1.75%;

(iv) The promissory note does not contain any statement that paying the amount listed as the "initial monthly payment" "will" as opposed to "may" result in negative amortization after the first interest rate change date.

Excluded from the Class are Defendant's employees, officers, directors, agents, representatives, and their family members, as well as the Court and its officers, employees, and relatives.

Plaintiff shall serve as representative of the Plaintiff Class, and Plaintiff's counsel, David M. Arbogast and Jeffrey K. Berns, Arbogast & Berns LLP; Brian S. Kabateck and Richard L. Kellner, Kabateck Brown Kellner, LLP; and Edward Y. Lee and Christopher P. Fields, Lee & Fields, A.P.C., are appointed as Class Counsel.

**IT IS SO ORDERED.**

Dated: January 22, 2010

*Elizabeth D. Laporte*
ELIZABETH D. LAPORTE
United States Magistrate Judge

14