IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIAN C. LYMBURNER, individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>U.S. FINANCIAL FUNDING, INC.<br><br>  Defendant.<br>_____/ | No. C-08-00325 EDL<br><br>**ORDER:**<br>**(1) PRELIMINARILY APPROVING PROPOSED SETTLEMENT;**<br>**(2) APPOINTING GILARDI & CO. LLC as SETTLEMENT ADMINISTRATOR;**<br>**(3) APPROVING NOTICE OF PROPOSED SETTLEMENT; AND**<br>**(4) SETTING HEARING FOR FINAL APPROVAL** |

Plaintiff Dian C. Lymburner, brought this class action lawsuit against Defendant U.S. Financial Funding, Inc. ("USFF"), alleging that Defendant violated the Truth-In-Lending Act ("TILA"), 15 U.S.C. § 1601, et seq., California Business & Professional Code § 17200, et seq. and common law claims for fraudulent omissions, breach of contract, and breach of the implied covenant of good faith and fair dealing. USFF allegedly created, approved, sold, controlled, or dictated the terms of Option ARM loans that are the subject of this case. Plaintiffs assert that the promissory notes of the mortgages did not inform the borrowers that paying the "initial monthly payment" will result in negative amortization after the interest rate change.

On January 22, 2010, this Court granted Plaintiffs' motion for class certification. The certified class includes:

> All individuals in the United States of America who, between January 17, 2004 and the date that notice is mailed to the Class, obtained an Option ARM loan originated by U.S. FINANCIAL FUNDING, INC., with the following characteristics:
>   (i) The numerical interest rate listed on page one of the Promissory Note is 3.0% or less;
>   (ii) In the same paragraph referenced in (i), the Promissory Note uses the term "may" instead of "will" or "shall" change, when describing an increase in that listed numerical rate. E.g : The interest rate I will pay **may** change;

        (iii) The margin amount added to the index for the loan is equal to or greater than 1.75%;
        (iv) The promissory note does not contain any statement that paying the amount listed as the "initial monthly payment" "will" as opposed to "may" result in negative amortization after the first interest rate change date.
        Excluded from the Class are Defendant's employees, officers, directors, agents, representatives, and their family members, as well as the Court and its officers, employees, and relatives.

USFF is no longer an active corporation in California and has no monetary assets of its own. Its only available funds come from an eroding insurance policy that is currently estimated to be about $174,000. Due to USFF's limited resources as well as the complex and disputed issues that would be costly to resolve at trial, the parties agreed to negotiate a settlement to resolve the claims. On March 22, 2011, the parties filed a joint statement stating that a settlement agreement had been reached, which was in the process of being finalized.

The Settlement Agreement sets forth a settlement amount of about $174,000, the estimated value of the insurance policy, of which (1) $10,000 would be distributed to the Settlement Administrator; (2) up to 25% of the total settlement fund would be distributed to class counsel as attorneys' fees and cost, or approximately $43,500; and (3) $5,000 would be distributed to the Class Representative. Under the Settlement Agreement, the remaining fund would be evenly divided among all class members, and amounts from undeliverable and uncashed checks would become part of a *cy pres* fund for The National Consumer Law Center.

Before the Court is Plaintiffs' unopposed motion for preliminary approval of the Settlement Agreement. The Court held a hearing on the motion on August 2, 2011. Plaintiffs filed a further declaration of named Plaintiff Dian Lymburner on August 9, 2011. For the reasons stated at the hearing and in this Order, the Court grants Plaintiffs' motion.

**DISCUSSION**

    **A.**    **Preliminary Approval of the Settlement Agreement**

Procedurally, the approval of a class action settlement takes place in two stages: the preliminary approval, which authorizes that notice be given to the Class, followed by a fairness hearing, after which the Court will make a final determination as to whether the parties should be allowed to settle the class action pursuant to the agreed upon terms. In reviewing the proposed settlement, the Court need not address whether the settlement is ideal or the best outcome, but only

2

1 whether the settlement is fair, adequate, free from collusion and consistent with Plaintiffs' fiduciary

2 obligations to the class. Hanlon, 150 F.3d at 1127; see also Rutter, supra, at § 10-118. Further,

> assessing a settlement proposal required the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

7 Hanlon at 1126 (quoting Officers for Justice v. Civil Serv. Comm'n of San Francisco, 688 F.2d 615,

8 625 (9th Cir. 1982).

9 Having examined this settlement for overall fairness according to the factors identified in

10 Hanlon, the Court finds that preliminary approval is appropriate. First, Plaintiffs may have a

11 meritorious case, but the risks inherent in continued litigation are great. USFF continues to deny

12 liability for any harm suffered by Plaintiffs and the disputed factual and legal issues would be

13 complex and costly to resolve at trial.

14 Second, this Settlement Agreement is premised on USFF's limited asset. USFF has no other

15 source of funding other than an eroding insurance policy, valued at $174,000, which is also the total

16 settlement amount. Since there is no other source to fund settlement or damages, the proposed

17 Settlement Agreement has little risk to create prejudice against individual class members.

18 Third, at this preliminary stage, the plan for distributing the settlement appears sufficiently

19 fair for conditional approval, although a further showing will need to be made for final approval.

20 For example, class counsel will file a motion requesting the Court's approval of compensation, up to

21 twenty-five percent of the settlement amount. Twenty-five percent is considered a benchmark for

22 attorneys' fees in common fund cases. See Hanlon, 150 F.3d at 1029. But the Ninth Circuit has also

23 stated that "the 25 percent benchmark rate, although a starting point for analysis, may be

24 inappropriate in some cases. Selection of the benchmark or any other rate must be supported by

25 findings that take into account all the circumstances of the case." Vizcaino v. Microsoft Corp., 290

26 F.3d 1043, 1047 (9th Cir. 2002). See also Alberto v. GMRI, Inc., 2008 WL 2561106, 11-13 (E.D.

27 Cal. June 24, 2008) (holding that a 22 percent fee request on a common fund was unjustified

28 because the case was less than one year old, no hearings had been held, the only motions filed were

3

1 mooted by the parties' stipulated stay of action, and formal discovery never got underway; the Court
2 looked to the lodestar method instead and required counsel to file a declaration thoroughly
3 explaining the fees prior to the fairness hearing).

4 Here, the docket shows three amended complaints, a motion to certify the class and an order
5 granting the certification, various papers relating to stipulations and case management. See, e.g.,
6 Dkt Nos. 52, 85, 90, 95. Hence, the attorneys have incurred certain costs in connection with this
7 case. Since attorneys' fees and cost are predicted not to exceed the 25% benchmark and the exact
8 amount will be submitted in the future for the Court's final approval, preliminary approval at this
9 juncture is proper. Plaintiffs' counsel is expected to make a more complete showing to justify the
10 fees in connection with the fairness hearing.

11 The Court notes that the Settlement Agreement awards $5,000 to the named Plaintiff. While
12 courts have found that $5,000 incentive payments are reasonable, the Court must evaluate the award
13 individually to detect excessive payments. Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003);
14 In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000) (approving incentive award of
15 $5,000 to two plaintiff representatives of 5,400 potential class members in $1.75 million settlement,
16 where incentive payment constituted only 0.56% of the settlement); Alberto v. GMRI, Inc., 2008
17 WL 2561106, 11-13 (E.D. Cal. June 24, 2008) (requiring the parties to present evidence showing the
18 named plaintiff's substantial efforts taken as class representative to justify the discrepancy between
19 her $5,000 award, constituting 0.71% of the settlement, and the $24.17 that each class member was
20 expected to receive). To assess whether an incentive payment is excessive, district courts balance
21 "the number of named plaintiffs receiving incentive payments, the proportion of the payments
22 relative to the settlement amount, and the size of each payment." Staton, 327 F.3d at 977.

23 Here, named Plaintiff's incentive payment of $5,000 is approximately 3% of the settlement, a
24 somewhat higher percentage than other cases approving the $5,000 amount, while the estimated
25 payout to class members is approximately $850 per claimant based on counsel's estimate at the
26 hearing of approximately 140 class members. In her supplemental declaration submitted after the
27 hearing, Plaintiff Lymburner stated that she spent approximately forty-four hours prosecuting this
28 action, including participating in phone conversations with counsel, compiling documents and

4

responding to discovery requests, preparing for, traveling to and sitting for her deposition, traveling to and attending two mediation sessions in this matter, and corresponding monthly via email and telephone with counsel over a three year period. See Lymburner Decl. ¶¶ 2-3. The Court finds that the incentive fee to the named Plaintiff appears to be reasonable, although the parties shall address the incentive payment to the named Plaintiff in their Joint Motion for Final Approval.

Furthermore, with respect to the other settlement terms, the parties have agreed that amount of undeliverable and uncashed checks will become part of a *cy pres* fund for The National Consumer Law Center. The selection of the *cy pres* fund recipient appears to be reasonable because The National Consumer Law Center appears to have a nexus with the legitimate objectives of this lawsuit. The law generally favors distributing unclaimed funds for a purpose as near as possible to the legitimate objectives underlying the lawsuit. See, e.g., In re Airline Ticket Commission Antitrust Litigation, 307 F.3d 679, 680 (8th Cir. 2002) (holding that the trial court had abused its discretion with respect to *cy pres* distribution because there was no nexus between the injured class and the local organizations receiving unclaimed funds) (citing Powell v. Georgia-Pacific Corporation, 119 F.3d 703, 706-07 (8th Cir. 1997) (approving the district court's order that nearly $1 million in remainder settlement funds be distributed as scholarships to African American high school students because the scholarship program carried out the plaintiffs' desire and addressed the subject matter of the lawsuit: employment opportunities available to African Americans in the region); Superior Beverage Co. v. Owens-Ill., Inc. 827 F. Supp. 477, 479 (N.D. Ill. 1993) (holding that unclaimed funds remaining after settlement of an antitrust case may be distributed to other public interests not closely related to the origins of the case).

**B.     Notice**

The proposed notice plan is constitutionally sound because individual notices will be mailed to all class members whose identities are known to the parties, and such notice is the best notice practicable. See Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1305 (9th Cir. 1990). The parties' corrected proposed Settlement Agreement (Ex. A), Notice of Proposed Settlement of Class Action ("Class Notice") (Settlement, Ex. 1), and Conditional Certification of Settlement Class (Settlement, Ex. 3) are sufficient to inform Class Members of the terms of the

Settlement, their rights under the Settlement, including the right to object to the settlement, or to elect not to participate in the Settlement, and the processes for doing so; and the date and location of the final approval hearing. Class Members may file objections to counsel's fee application and to request for payment to class representative no later than twenty-one (21) calendar days prior to the deadline for Class Members to mail objections and requests for exclusions. Accordingly, the Class Notice and the proposed implementation schedule are approved. See Hanlon, 150 F.3d at 1025.

**C. Order**

The content and form of the proposed Class Notice in substantially the format as set forth in Exhibit 1 to the Agreement and the plan proposed by the parties for distributing the Class Notice are approved. The procedures for voluntary exclusion of Class Members from the proposed Agreement and the procedures by which Class Members may object to the proposed Agreement, as set forth in the Agreement are also approved.

Gilardi & Co., LLC is approved as the Settlement Administrator for the proposed Agreement. The Settlement Administrator shall mail the Class Notice in the manner and at the times set forth in the Agreement.

The procedure by which Class Members who seeks to be excluded from the proposed Agreement may file their exclusion arising from or related to any of the claims made in the Class Action and the deadlines relating thereto as set forth in the Agreement are approved, except that the deadline for counsel to file a fee application and request for service payment to the Class Representative is no later than twenty-one (21) days prior to the deadline for Class Members to mail Objections and Requests for Exclusion. All requests for exclusion must be mailed to the Settlement Administrator at the address set forth in the Class Notice, via first class United States mail postmarked no later than sixty (60) days after the date of the Class Notice, regardless of the address to which the Class Notice was originally mailed. No person may exercise any exclusion rights on behalf of any other person or persons, except as reasonable in instances of disability, guardianship, or conservatorship. Any purported exclusion inconsistent with this Order shall be void, and any such Class Members who are subject to such purported exclusions shall be treated as Class Members

pursuant to the terms of the Agreement. Class Members who do not exclude themselves from or object to the proposed Agreement will be represented by Class Counsel as appointed above.

The Court shall conduct a Final Approval Hearing to determine the final approval of the Agreement on January 31, 2012 at 9:00 a.m. A joint Motion for Final Approval shall be filed no later than December 20, 2011. The purposes of the Final Approval Hearing are to determine (1) whether the proposed Agreement on the terms and conditions provided in the Agreement is fair to the proposed Class, reasonable and adequate and whether the Released Claims (as defined in the Agreement) should be released, and the Action dismissed; and (2) whether the application of Class Counsel for the reimbursement of litigation expenses and for an incentive award to the Class Representative for her role in bringing and participating in this litigation, should be approved and, if so, in what amounts. The Court may adjourn or continue the Final Approval Hearing, and may continue interim deadlines provided herein, without further notice to the Class.

No later than twenty-one (21) days prior to the Final Approval hearing, Class Counsel shall file a memorandum addressing any timely submitted objections to the Settlement, the Settlement Administrator shall file with the Court a declaration identifying all persons who have made a timely and valid Request for Exclusion, and the Settlement Administrator shall file a declaration stating that any required Notice has been completed in accordance with the terms of the Preliminary Approcal order.

The procedures for notifying Class Members of their rights to object to the Agreement and the procedures for objecting to the proposed Agreement are approved. All written objections must be filed with the Clerk of the Court and served on the entities identified in the Class Notice, via first class United States mail postmarked no later than sixty (60) days after the date of the Class Notice, regardless of the address to which the Class Notice was originally mailed. The written Objection must contain: (a) a statement of the Class Member's objection, including the specific grounds for the objection and any other reasons why such Class Member desires to be heard; (b) any legal support the Class Member wishes to bring to the Court's attention; and (c) any evidence, documents or writing that such Class Member wishes to introduce in support of the written Objection. Replies to Objections must be filed with the Court at least fourteen (14) calendar days before the Final

Approval Hearing. All Class Members, unless they timely exclude themselves from the Class in compliance with the procedures set forth in the Agreement and the Class Notice, shall be bound by all orders, determinations, and judgments in the Action concerning the proposed Agreement.

In the event that the Court does not enter the final order (the "Final Approval Order") approving the Agreement, if the Final Order Date does not occur, or if the proposed Agreement is terminated for any reason whatsoever, then the Agreement shall become null and void; the Action may continue (with litigation to recommence as provided for therein); and any and all orders entered pursuant to the Agreement shall be deemed vacated; and the parties may not make any references to or use of the Agreement, any orders, or any other documents related thereto.

In aid of the Court's jurisdiction to implement and enforce the Agreement, the Class Representative and all Class Members shall be preliminarily enjoined and barred from commencing or prosecuting any claim against the Released Parties or action inconsistent with the Released Claims (as defined in the Agreement), whether directly, representatively, derivatively, or in any other capacity, whether by a complaint, counterclaim, defense, or otherwise, in any local, state or federal court, or in any agency or other authority or forum wherever located. Nothing in this paragraph, however, shall be construed to prevent a Class Member from presenting objections to the Court regarding the Agreement in accordance with this order.

The Court retains jurisdiction to construe, interpret, enforce, and implement the terms of the Agreement and this order. Any dispute regarding the Agreement will be presented to and resolved by the Court.

Neither this Order, the Agreement, nor any of its terms or provisions, nor any of the negotiations between the Parties or their counsel (nor any actions taken to carry out this order), is, may be construed as, or may be used as an admission or concession by any or against any of the Parties or the Released Parties of any wrongdoing, the validity of any claim or liability, any alleged violation or failure to comply with any law, any alleged breach of contract, or any legal or factual argument, contention or assertion, and the Parties deny any wrongdoing or liability on their part. The execution and implementation of the Agreement or its terms shall not be, in any event, construed as, or deemed evidence of, an admission or concession as to USFF's denials, defenses, or factual or

legal positions, nor shall be offered or received in evidence in any action or proceeding against any party in court, administrative agency or other tribunal for any purpose whatsoever, except as may be necessary in a proceeding to enforce the terms of this Order and the Agreement; provided, however, that this Order and the Agreement may be filed in any action against USFF or the Released Parties to support a defense of res judicata, collateral estoppel, release, waiver, good faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claims preclusion, issue preclusion or similar defense or counterclaim.

Accordingly, the Court grants preliminary approval of the class action settlement. At the fairness hearing, the parties should be prepared to discuss, *inter alia*, justification of attorney fees.

**IT IS SO ORDERED.**

Dated: August 19, 2011

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge